UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRESH AIR FOR THE EASTSIDE, INC, et al.,

                Plaintiffs,

-vs-

WASTE MANAGEMENT OF NEW YORK, LLC AND THE CITY OF NEW YORK,

                Defendants.

DECISION and ORDER

18-CV-6588-MAV-MJP

## INTRODUCTION

**Pedersen, M.J.** Before me is Defendant Waste Management of New York, LLC's ("WMNY") motion to for an *in camera* review of attorney-expert communications and documents Plaintiffs have asserted are protected by the work product doctrine and attorney-expert privilege related to Plaintiffs' expert, Mary Ellen Holvey, and for a determination as to whether there is subject matter waiver because of certain disclosures made by Plaintiffs. In making my determination I reviewed WMNY's letter, dated May 27, 2025, and the exhibits attached thereto (ECF No. 244), Plaintiffs' letter, dated May 27, 2025, and the exhibits attached thereto (ECF No. 245), and WMNY's letter, dated June 23, 2025, and the exhibits attached thereto (ECF No. 252). I also conducted an *in camera* review of the documents provided to me via electronic mail on May 27, 2025. Finally, I held oral argument on June 26, 2025. Based on the forgoing I find that there was subject matter waiver and order Plaintiffs to produce all communications and documents relating when, where,

and how to conduct the January 2018 sampling was conducted and testing and related analysis of the same.

## PROCEDURAL HISTORY

Plaintiff Fresh Air for the Eastside, Inc. ("FAFE") and approximately 200 individual plaintiffs filed this action against WMNY and New York City ("NYC") alleging violations of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and state law claims for public nuisance, private nuisance, ordinary negligence, gross negligence, and trespass. These claims arise from WMNY's operation of the High Acres Landfill and Recycling Center in Perinton, New York ("Landfill"), and NYC's agreement with WMNY to ship municipal solid waste to the Landfill each year for thirty years. (ECF No. 15; ECF No. 44 at 1.)

During the course of the case numerous original Plaintiffs dismissed their claims leaving 94 Plaintiffs. (Foss Dec. ¶ 5, ECF No. 243-1.)

## FACTUAL BACKGROUND

Relevant to the present motion, in January 2018, prior to the commencement of this case, Plaintiffs hired Ms. Holvey "as a consulting expert to conduct air sampling for volatile organic compounds (VOCs), landfill fragrances, and hydrogen sulfide levels in the residential neighborhoods near the High Acres Landfill that is the subject matter of this litigation." (Pl.'s letter at 1, ECF No. 245.) Plaintiffs' counsel and Ms. Holvey exchanged written communications, mostly via electronic mail, during the time Ms. Holvey conducted testing and thereafter. (*Id.*)  Ms. Holvey

prepared a report of her findings, dated April 13, 2025.

In their Second Amended Complaint (and prior iterations of the same) Plaintiffs cited Ms. Holvey's testing and quoted from her report. Specifically, Plaintiffs included the following language in their Second Amended Complaint:

> 216. Completely at their wits end after this meeting, FAFE hired an environmental consultant to conduct air sampling on three days at the end of January 2018 for the presence of volatile organic compounds (VOCs), Landfill fragrances, and hydrogen sulfide.
> . . .
>
> 218. FAFE's environmental consultant documented airborne hydrogen sulfide concentrations ranging from 3.0 ppb to 13 ppb.
>
> 219. FAFE's environmental consultant sampled air roughly 0.8 miles from the Landfill, which results revealed that the hydrogen sulfide concentration of 13 ppb over a half-hour period on January 19, 2018 was "indicative that detectable levels of hydrogen sulfide were found during an odor event that may potentially exceed the NYSDEC one-hour ambient air quality standard of one-hour 10 ppb provided in 6 N.Y.C.R.R. § 257-10.3."

(Pls.' Second Am. Compl., ECF No. 79; WMNY's Letter at 2, ECF No. 244; Pls.' Letter at 1, ECF No. 245.)

In addition, Plaintiffs cited Ms. Holvey's testing and quoted her report in interrogatory responses. (WMNY's Letter at 2 & Ex. D at 17–18; Pls.' Letter at 1.) Plaintiffs also produced first a redacted and, later, an unredacted copy of Ms. Holvey's report in this litigation. (WMNY's Letter at 2 n.2; Pls.' Letter at 1.) Further, Plaintiffs cited to Ms. Holvey's testing and attached a copy of her report in an application to the New York State Department of Environmental Conservation ("NYSDEC") seeking to modify the Landfill's permits. (WMNY's Letter at 2 n.2.) Finally, during discovery in this matter, Plaintiffs produced an email sent to an attorney at the DEC that

3

inadvertently included communications between Ms. Holvey and one of Plaintiffs' counsel. (Pls.' Letter at 1 & Ex. A.)

Ms. Holvey also conducted testing for both the Fairport Central School District and the Town of Perinton. WMNY asserts that Ms. Holvey is a fact witness because of this testing, which she conducted around the same time period as she conducted testing for Plaintiffs. (WMNY's Letter at 2.) Accordingly, WMNY served a subpoena *duces tecum* on Ms. Holvey seeking documents and noticing her for a deposition. (WMNY's Letter at 3; Pls.' Letter at 2.) Ms. Holvey produced some documents but withheld others based on Plaintiffs' claim of privilege. (WMNY's Letter at 3.) Plaintiffs provided a privilege log but withheld approximately 115 documents on the bases of the attorney-expert privilege or attorney work product. (WMNY's Letter at 3; Pls.' Letter at 2.) Plaintiffs produced the privilege log to WMNY on April 29, 2025. (Pls.' Letter at 2.)

Further, Plaintiffs' counsel provided me with a sampling of 29 email threads from the privilege log, which I reviewed *in camera.*

During oral argument, counsel for WMNY clarified that his client is only arguing that Plaintiffs waived work product protection because they cited to Ms. Holvey and quoted her in the Second Amended Complaint and interrogatory responses. WMNY is not claiming waiver occurred because Plaintiffs produced Ms. Holvey's redacted and unredacted report.

## JURISDICTION

On November 14, 2019, the Clerk of the Court assigned this matter to the

4

undersigned to address all pre-trial matters excluding dispositive motions. (Text Order of Referral, ECF No. 55.)[1]

## LEGAL STANDARD

*Federal Rule of Evidence 502(a)*

It is fundamental that voluntary disclosure by or on behalf of a party during judicial proceedings may waive work product protection or asserted privilege as to the disclosed information as well as all the otherwise privileged information relating to the same subject-matter of the disclosed information. *See In re von Bulow*, 828 F.2d 94, 101–02 (2d Cir. 1987).

The following provisions apply, in the circumstances set out, to disclosure of a communication or information covered by the attorney-client privilege or work-product protection.

> (a) Disclosure Made in a Federal Proceeding or to a Federal Office or Agency; Scope of a Waiver. When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if
>
>     (1) the waiver is intentional;
>
>     (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
>     (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

---

[1] Chief Judge Elizabeth A. Wolford previously referred this case to the Honorable Johnathn W. Feldman "for all pretrial matters excluding dispositive motions." (Text Order of Referral, ECF No. 52.)

The Advisory Committee notes and the extant case law provide further guidance about this issue:

The Advisory Committee notes to Rule 502 provide, in pertinent part:

The rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. *See, e.g., In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner. It follows that an inadvertent disclosure of protected information can never result in a subject matter waiver. *See* Rule 502(b). The rule rejects the result in *In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989), which held that inadvertent disclosure of documents during discovery automatically constituted a subject matter waiver.

Subject-matter waiver applies where considerations of fairness should allow the "attacking party to reach all privileged conversations regarding a particular subject once one privileged conversation on that topic has been disclosed," *von Bulow*, at 102–03, in order to avoid prejudice to the adversary party and "distortion of the judicial process" that may result from selective disclosure. *Id*. at 101. *See also United States v. Treacy*, 2009 WL 812033, *3 (S.D.N.Y. Mar. 24, 2009) (Rule 502(a) allows finding of subject-matter waiver of attorney-client privilege "in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary" (*quoting* Advisory Note to Fed. R. Evid. 502(a))). "'Whether fairness

6

requires disclosure ... [is] decided ... on a case-by-case basis ... depen[ding] primarily on the specific context in which the privilege is asserted.'" *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (citing and quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000)).

## DISCUSSION

WMNY asserts that subject matter waiver applies under Fed. R. Evid. 502(a) to communications between Plaintiffs' counsel and their expert, Ms. Holvey, because Plaintiffs "affirmatively relied on Ms. Holvey's January 2018 testing and her analysis of that data to support their claims but asserted privilege to shield related information." (WMNY's Letter at 3.) In other words, WMNY asserts that Plaintiffs are using privilege as both "a shield and a sword" and that "[f]airness requires that *all* documents concerning Ms. Holvey's January 2018 testing and related analysis be disclosed, not just those portions that Plaintiffs pick and choose." (WMNY Letter at 3, emphasis in original.)[2]

WMNY also asserts that it is entitled to communications from Plaintiffs' counsel to Ms. Holvey because such communications would provide information regarding where and when to conduct the testing. WMNY further contends that Plaintiffs have opened the door to producing Ms. Holvey's opinions about the test results because Plaintiffs included Ms. Holvey's opinion in the operative complaint.

---

[2] As an example of the selective production of information, during oral argument WMNY asserted that a comparison of the redacted and unredacted versions of Ms. Holvey's report reveal that Plaintiffs redacted information that was not helpful to them.

Plaintiffs contend that there has been no waiver in general, let alone waiver regarding a particular subject matter. They assert that the portion of Ms. Holvey's report included in the Second Amended Complaint (and prior iterations of the complaint) is factual and that the sampling data information from the report "could have been obtained by anyone with the requisite equipment performing similar work on those specific days." (Pls.' Letter at 3.)

Further, they assert that the report contains all the data WMNY is seeking regarding when and how the January 2018 testing was conducted. Plaintiffs also assert that communications with an expert are privileged. (Pls.' Letter at 2.)

In addition, Plaintiffs argue that waiver of the work product protection only occurs when one party in a lawsuit uses it unfairly to gain some type of advantage and Plaintiffs have not done that here. (*Id.* at 3.) They assert that counsel's communications and documents regarding Ms. Holvey's January 2018 testing are protected by the work product doctrine and attorney-expert privilege. (*Id.* at 4.)

At oral argument, Plaintiffs asserted that if there is subject matter waiver it should not apply to communications between Plaintiffs' counsel and Ms. Holvey regarding strategy because there are a series of emails contained on the privilege log that involve strategy, and they constitute attorney work product.

Finally, Plaintiffs contend that if there is subject matter waiver, the third prong of the waiver inquiry under Fed. R. Evid. 502(a) regarding fairness should limit the extent of the waiver. Plaintiffs assert that any communications or documents that

8

involve attorney work product and discussions of strategy should be excluded from any waiver.

### *Plaintiffs' waiver was intentional*

There can be no dispute that Plaintiffs' waiver was intentional because they affirmatively cited Ms. Holvey and quoted her report in the Second Amended Complaint and interrogatory responses regarding her January 2018 testing.

### *The disclosed and undisclosed communications or information concern the same subject matter.*

I agree with Defendants that the subject matter of the disclosed and undisclosed information is the same—all relating to Ms. Holvey's January 2018 sampling and testing and analysis of the same. Plaintiffs disclosed sampling and testing information from January 2018 in their Second Amended Complaint.

After conducting an *in camera* review of the 29 email threads I found that, aside from a document labeled FAFE258920, the email threads are relevant to the January 2018 testing. Further, a review of the "subject matter" column in Plaintiffs' privilege log regarding Ms. Holvey's withheld documents demonstrates that many of the documents relate to the January 2018 sampling and testing and subsequent analysis of the forgoing.[3] For example, common subject matters listed include "Sampling costs," "Sampling materials," "Sampling protocol," "Sampling

---

[3] In determining whether the disclosed information in the Second Amended Complaint and the withheld documents concerned the same subject matter I only reviewed those entries contained in the privilege log under the heading "subject matter" that are highlighted. (*See*, WMNY's Letter at Ex. H, ECF No. 244-8.)

coordination," "Sampling timing," "Sampling timing and locations," and "Questions on report." (WMNY's Letter at Ex. H, ECF No. 244-8.)

It is clear to me that the information Plaintiffs disclosed in the Second Amended Complaint and undisclosed, highlighted communications contained in the privilege log concern the same subject matter.

Thus, based upon Plaintiffs' express waiver, they must produce all communications and documents related to Ms. Holvey's January 2018 sampling and testing and subsequent analysis of the same. The question remains, however, as to whether Plaintiffs may limit their waiver to their chosen scope—any waiver should exclude communications or documents that involve attorney work product and discussions of strategy—or whether fairness requires disclosure of the related materials.

### The *disclosed and undisclosed communications or information should, in fairness, be considered together.*

Having conducted an *in camera* review of several of the disputed documents, I find that considerations of fairness require that WMNY have access to them so that it is able to have a contextual understanding of the information disclosed by Plaintiffs in the Second Amended Complaint and interrogatory responses. Without access to the information WMNY would be at a disadvantage in defending themselves in this litigation due to Plaintiffs' actions, which would be unfair.

Plaintiffs contend that the information contained in the Second Amended Complaint is factual and that anyone with the requisite equipment could have obtained the same information. However, this is not true. It is clear from my *in*

10

*camera* review and a review of the subject matter column in Plaintiffs' privilege log that the timing of the testing was of paramount importance. The pungency of the odors allegedly emanating from the Landfill depended on a variety of factors including time of day and the direction of the wind. WMNY could not have known what dates and times Ms. Holvey was going to conduct her sampling. WMNY cannot recreate that sampling now. What it can do is try to understand the data that Plaintiffs have affirmatively used as proof of their case against WMNY.

WMNY aptly highlights its disadvantage if Plaintiffs are permitted to shield the sampling and testing and subsequent analysis of the same. It refers to the email chain produced by Plaintiffs' counsel in this litigation that was contained in communications to NYSDEC, which is also contained on the privilege log, and discusses the testing equipment used by Ms. Holvey. (WMNY's Letter at Ex. B, ECF No. 244-2.) More specifically, Ms. Holvey indicates that she can order "equipment with the shorter duration regulators." (Ex. B at 16–17.) Ms. Holvey further indicated that "[t]he samples will be for a 1/2 duration to capture the odor." (*Id*. at 10.) WMNY points out that Ms. Holvey's report explained that NYSDEC "has a **one-hour standard** of 10 parts per billion (ppb)" and that Ms. Holvey was discussing only sampling for half an hour. (WMNY's Letter at 5, emphasis in letter.) While I cannot determine the importance of this information, from what I have been provided and knowing the facts of this case as they stand now, this appears to be very relevant information that should, in fairness, be disclosed.

## CONCLUSION

Based on the forgoing, I direct Plaintiffs to review their entire privilege log related to Ms. Holvey and to produce all communications and documents relating to when, where, and how she conducted the January 2018 sampling and testing and related analysis of the same. This includes communications between Plaintiffs' counsel and Ms. Holvey if they relate to the same subject matter.

Further, at Ms. Holvey's deposition, WMNY is permitted to question her about the following:

- her January 2018 testing
- the data she collected during her testing
- the conclusions she reached
- her reporting of that testing, including discussions relating to drafting her report.

**SO ORDERED**.

DATED: July 28, 2025
Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge